```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND

SYLVIA J. REDDY                *

                               *
        Plaintiff
   vs.                         * CIVIL ACTION NO. MJG-03-425

BALTIMORE COUNTY, MARYLAND,    *
et al.
                               *
        Defendants
*    *       *       *       *       *       *       *       *
```

MEMORANDUM AND ORDER

The Court has before it the Motion to Dismiss filed by Defendants Baltimore County and Terry Woodhouse [Paper 7] and the materials submitted by the parties related thereto.  The Court finds a hearing unnecessary.


I.   BACKGROUND[1]

In October of 1987, Sylvia Reddy ("Reddy" or "Plaintiff") was hired as a police officer by Baltimore County ("the County").  Reddy claims that, beginning in 1993, she endured verbal and physical abuse from a fellow police officer, Terry Woodhouse ("Woodhouse").  On February 26, 2002, there was an incident in which Woodhouse kicked Reddy, causing substantial

---

[1] The "facts" are stated herein as alleged by Plaintiff.

physical injury for which Reddy filed a workers' compensation claim.  See Defs.' Ex. 2.

Plaintiff asserts that she brought this incident to the immediate and repeated attention of her supervisors.  Second Amended Complaint (referred to herein after as "Complaint") ¶ 7.  She claims that the Police Department failed to take any significant disciplinary or remedial action concerning Officer Woodhouse, but instead involuntarily and improperly transferred Reddy and punished other officers who spoke out on her behalf.[2]

On April 3, 2002, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission,[3] utilizing the administrative procedure set out in Title VII of the Civil Rights Act.  42 U.S.C. § 2000e et seq. (2003).  On November 21, 2002, the EEOC concluded its investigation of the above-described incident, declined to make a finding as to statutory violation, and issued Ms. Reddy a notice describing her right (under 42 U.S.C. § 2000e-5) to bring a civil suit within

---

[2] Reddy asserts that other employees who spoke out against Woodhouse's practices were "demoted, moved to other assignments, placed back out on street duty and . . . given unreasonable reprimands and charges."  Complaint ¶ 9.

[3] Pl.'s Ex. A.

2

ninety days of receipt.[4]  The Court's docket reflects that Reddy filed the instant lawsuit on February 14, 2003, a date less than ninety days after Reddy's receipt of the November 21, 2002 Notice.

Plaintiff asserts, in the Second Amended Complaint now before the Court, the following claims:

    Count I:      42 U.S.C. §§ 1983, 1988 (both Defendants)
    Count II:     Battery (Woodhouse)
    Count III:    Negligent Hiring, etc (the County)

Defendants seek dismissal of the federal claim, contending that: 1) Plaintiff's federal claim is time-barred by § 2000e-5, 2) Plaintiff's recourse to § 1983 is precluded by Title VII, 3) Defendants' actions were not "under color of law," 4) Defendants' actions did not violate any underlying provision of Constitutional law, and 5) Plaintiff somehow has an adequate and sufficient remedy in her workers' compensation claim.  Defendants seek dismissal of the state claims, noting

---

[4] Defendants concede the date of this EEOC Notice and indeed attach this document to their Memorandum.  Defs.' Ex. 1.

3

that supplemental jurisdiction should not be exercised as the federal claim is unviable.

II.     PROCEDURAL POSTURE

Plaintiff raises a question as to whether this Motion should be treated as a Motion for Summary Judgment under Rule 56 instead of a Motion to Dismiss.  Plaintiff contends that Defendants present for consideration "matters outside the pleadings", notably the mentioned EEOC Notice and workers' compensation documents.  Plaintiff argues that such matters may not, per Rule 12(b), be considered in assessing whether a valid claim is stated, and that consideration of these matters would compel disposition of the Motion as provided in Rule 56.  Plaintiff proceeds to present her own proffer of evidence for the Court's review, including a copy of the receipt for payment of her fee for filing this suit,[5] the initial EEOC filing, and Ms. Reddy's "Affidavit in Opposition to Motion to Dismiss/Motion for Summary Judgment."

When ruling on Rule 12(b)(6) motions, federal courts can look somewhat beyond the complaint itself.  Although a "court

---

[5] Pl.'s Ex. A.

4

primarily considers the allegations in the complaint,... matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint... also may be taken into account." 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 at 299 (2d ed. 1990). The "public record" exception to the general rule has been priorly evoked in this Circuit. <u>Norfolk Fed'n of Business Districts v. HUD</u>, 932 F.Supp. 730, 736-7 (E.D. Va. 1996); <u>see also Gasner v. County of Dinwiddie</u>, 162 F.R.D. 280, 282 (E.D. Va. 1995). Accordingly, the Court may, at the dismissal stage, consider the following exhibits: Reddy's EEOC filing, the EEOC Notice, and Reddy's workers' compensation claim.

A closer question is whether the Court may consider the receipt, referenced by Plaintiff to show the date she filed this action. However, it is unnecessary to reach the issue. The Court's docket, of which the Court takes judicial notice, establishes, absent any showing to the contrary, that the case was filed on February 14, 2003.

Accordingly, the instant Motion shall be considered as a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

III. **LEGAL STANDARD**

The Court must deny a Motion to Dismiss under Rule 12(b)(6) unless it "appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-6 (1957). "The question is whether in the light most favorable to the Plaintiff, and with every doubt resolved in his behalf, the Complaint states any valid claim for relief." 5A Wright & Miller § 1357 at 336. The Court, when deciding a motion to dismiss, must consider the well-pled allegations in a complaint as true and must construe those allegations in favor of the Plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421-2 (1969). The Court must further disregard the contrary allegations of the opposing party. A.S. Abell Co. v. Chell, 412 F.2d 712, 715 (4th Cir. 1969).

IV   **DISCUSSION**

    A.   **Title VII Exhaustion**

Title VII requires that an aggrieved party exhaust administrative remedies prior to filing suit and file a civil action, if at all, within ninety days of the EEOC issuing a Dismissal and Notice of Rights on the complaint. 42 U.S.C. § 2000e-5 (2003). Defendants contend that Plaintiff's claim was filed later than ninety days after the issuance of such

Notice.  Defendants do not explain how, in view of the November 21, 2002 date of issuance of the Notice and the February 14, 2003 filing date on the record of the Court, they can make any such contention.

    B.    <u>Availability of Section 1983</u>

Plaintiff did not make a claim under Title VII. Defendants suggest that Title VII constitutes an exclusive federal remedy for government employees victimized by sexual or race-based harassment in the workplace.[6]  Of course, if this were the case, then Plaintiff's § 1983 claim would be improper.  However, Title VII does not have such preclusive effect, at least not in the circumstances here presented.

This Court cannot lightly constrict a remedy pronounced in a Congressional enactment such as § 1983. <u>Wright v. City of Roanoke Redevelopment and Housing Auth.</u>, 479 U.S. 418, 423-4 (1987); <u>Golden State Transit Corp. v. City of Los Angeles</u>, 493 U.S. 103, 107 (1989).  Nothing in the text of Title VII expressly forecloses access to § 1983.  Section 2000e-5 states only that a "civil action may be brought" by an aggrieved

---

[6] "Title VII was the statutory vehicle by which Reddy could have pursued her claims in federal court.  By abandoning that course she forfeited her rights to a federal forum." Mem. in Supp. of Mot. to Dismiss at 3.

7

party but does not prohibit a plaintiff from presenting any other causes of action related to the administrative complaint.  The Fourth Circuit, based on an extensive analysis of Title VII's legislative history, concluded that "the Act was not intended to preempt the preexisting remedy under § 1983 for violations of the fourteenth amendment by state employers."  Keller v. Prince George's County, 827 F.2d 952, 958 (4th Cir. 1987); see also Beardsley v. Webb, 30 F.3d 524, 526-7 (4th Cir. 1994) (deeming the Keller holding unaffected by amendments to Title VII).

As Defendants note, a case subsequent to Keller does read Title VII to bar a state employee's suit under § 1983.  Hughes v. Bedsole, 48 F.3d 1376, 1383 n.6 (4th Cir. 1995).  However, Hughes involved a plaintiff who (unlike Reddy) ran afoul of § 2000e-5's procedural strictures, filing suit after the post-Notice time period had expired.  The Hughes Court expressed a concern that creative plaintiffs might thus circumvent the administrative mechanism that Title VII prescribed and accordingly limited use of § 1983 to combat such evasion.[7]

---

[7] Similar concerns were expressed by the analogous opinions on which Hughes relied: Great American Federal Savings & Loan v. Novotny, 442 U.S. 366, 376 (1979) ("[a § 1985] complaint could completely bypass the administrative process... established by Congress"); Zombro v. Baltimore City Police Dep't, 868 F.2d 1364, 1366 (4th Cir. 1989) (the Age

8

The procedural requisites of Section 2000e-5 must be met, else all federal claims are lost.  But, when plaintiffs comply with Title VII procedures and retain the right to bring Title VII claims, no such preemption occurs with regard to violations of Constitutional rights.[8]  <u>Brown v. Housing Auth. of Calvert County</u>, 150 F.Supp.2d 856, 862 (D. Md. 2001).

Certainly, some judges in this District have read <u>Hughes</u> more broadly, as constituting an "abandonment" of <u>Keller</u> and as precluding § 1983 actions by government employees.  E.g., <u>Burtnick v. McLean</u>, 953 F.Supp.121, 123 (D. Md. 1997).  The Fourth Circuit, however, has rejected such rulings, suggesting that Title VII preempts § 1983, if at all, only where established procedures are not complied with by the claimant.  <u>Booth v. Maryland</u>, 327 F.3d 377, 382 (4th Cir. 2003).

Plaintiff's right to present a § 1983 claim is not affected by her decision not to plead a Title VII claim

---

Discrimination in Employment Act preempts § 1983, else ADEA's "comprehensive administrative process would be bypassed...").

[8] As Reddy alleges only violations of Constitutional (presumptively, Fourteenth Amendment) rights, this case falls squarely within <u>Keller</u>'s holding that § 1983 is not preempted.  A different question would be raised if she were seeking to use § 1983 to obtain relief for violations of federal statutory rights.  See, e.g., <u>Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Assoc.</u>, 453 U.S. 1, 20 (1981).

alongside it. Id., at 383; see also Morrow v. Farrell, 187 F.Supp.2d 548, 553 (D. Md. 2002).

### C. "Color of Law"

Section 1983 affords a remedy to those whose rights under federal law are violated, but only where the offender acts under "color of" state law, usurping the power of a state or local government entity. An officer's act may be under "color of law" even if it happens to be violative of state law, custom or policy, so long as the act is significantly facilitated by the operation of state law or authority. Monroe v. Pape, 367 U.S. 167 (1961).

In most settings, an action under "color of law" is equivalent to "state action" under the Fourteenth Amendment. United States v. Price, 383 U.S. 787, 794 n.7 (1966); Mark v. Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995). Both inquiries into color of law and state action contentions focus on the degree of entanglement or integration between the immediate actor and the state. Brentwood Acad. v. Tenn. Secondary Sch. Athletic Assoc., 531 U.S. 288, 297 (2001); Hatboro, 51 F.3d 1137, at 1142. Central to the Court's analysis, therefore, is

the degree to which Woodhouse acted with the help of, or in concert with, state officials.

State employment is generally sufficient to render a defendant a state actor, exposed to § 1983 liability.[9] <u>West v. Atkins</u>, 487 U.S. 42, 49 (1988). Moreover, Plaintiff need not rest on this generality. Reddy alleges, essentially, that Woodhouse was part of a network of harassment and hostility that tainted the Police Department, and that Woodhouse's actions (including the alleged battery) were facilitated by the problematic manner in which the Police Department managed employee interactions. Complaint ¶¶ 7-9. On Plaintiff's version of the facts, which the Court must credit at the dismissal stage, Defendant Woodhouse would have acted under color of law.

Defendants argue that Woodhouse's "status as a police officer did not aid him in the least" in performing the harassment acts. Mem. in Supp. of Mot. to Dismiss at 4. That Reddy and Woodhouse both were police officers is not conclusive. More pertinent is the fact that the two were

---

[9] An exception is carved out for government employees, such as public defenders, who must act with considerable independence from the rest of the state machinery. <u>West v. Atkins</u>, 487 U.S. 42, 50 (1988). No one contends that police personnel in general, or Terry Woodhouse in particular, fit this description.

11

employees in an allegedly hostile work environment.  Plaintiff does not base her claim on improper enforcement of the criminal law by one exercising police authority.  Thus, it makes little sense to question, as Defendants suggest,[10] whether the tools of police-civilian interaction (badge, handcuffs, etc.) were used.  In any event, as was the case with the prison physician in West, Woodhouse's actions at issue were made possible by his employment and commission by the County.  The Court cannot find that Plaintiff cannot possibly prove that Woodhouse acted under color of state law.

### D. Underlying Constitutional Violation

Section 1983 does not, in and of itself, establish substantive rights.[11]  Rather, it simply provides a vehicle to obtain a remedy for a violation of rights conferred by some other federal statute and/or the Constitution.  Substantive

---

[10] Defendants cite Barna v. Perth Amboy, 42 F.3d 809, 816 (3d Cir. 1994).  The Barna Court, in its analysis of the § 1983 "color of law" requisite, appropriately placed stock in "manifestations of... pretended authority" such as "identifying oneself as a police officer."  However, this case concerned off-duty officers assaulting civilians and is inapposite to the instant suit.

[11] One cannot, as Plaintiff purports to, claim a "violation of § 1983."  Complaint ¶ 15. One must instead allege a violation of underlying federal law and use § 1983 as the procedural means to vindicate their right.

focus is accordingly on the underlying right. <u>Chapman v. Houston Welfare Rights Org.</u>, 441 U.S. 600, 601 (1979).

Plaintiff broadly asserts that Defendants "deprived [her] of her constitutional rights without affording her due process of law." Complaint ¶ 15. However, in the context of Rule 12(b)(6), Plaintiff's claim cannot be dismissed unless, on the facts alleged, relief could not be granted under <u>any</u> legal theory.[12] <u>E.g., Daniels v. USS Agri-Chemicals</u>, 965 F.2d 376, 381 (7th Cir. 1992).

Plaintiff's allegations of a Constitutional violation are broadly stated and her precise Constitutional theory is not readily apparent. Nevertheless, to obtain dismissal, Defendant must demonstrate beyond doubt that Plaintiff can prove no set of facts entitling her to relief. <u>Conley</u>, 355 U.S. at 45-6 (1957).

In theory, the Court could go through the exercise of speculating on all possible factual scenarios that Plaintiff might

---

[12] The federal Rules set forth a liberal pleading regime, and a complaint is viable if it gives Defendants fair and meaningful notice of the nature of sustainable claims brought against them. <u>Planned Parenthood of Colombia/Willamette, Inc. v. Am. Coalition of Life Activists</u>, 945 F.Supp. 1355, 1380 (D. Or. 1996). Here, Defendants (all government entities or employees) had notice of the harassment claim being brought and of the implications for Constitutional tort liability under the Fourteenth Amendment and § 1983.

establish to determine whether any one of those could possibly warrant relief on a Constitutional tort theory and then issue a decision spelling out one or more factual hypotheses on which there is some possibly valid claim.  It is more appropriate, however, to permit the case to move into the discovery[13] and summary judgment phases so that the validity of Plaintiff's Constitutional claim or claims can be determined in light of the evidence and precise legal theories she relies upon.  Accordingly, dismissal shall be denied but Plaintiff must understand that the Court has not, by any means, determined the validity of her Constitutional tort claims – whatever they may be.

    E.    <u>The Effect of Plaintiff's Workers' Compensation Claim</u>

Plaintiff's workers' compensation claim does not bar her federal claim.  Plaintiff has not, to the knowledge of this Court, actually received an award from the state.  Moreover, Defendants have not shown that such award would compensate for all of the harms compensable under federal law stemming from a violation of Plaintiff's Constitutional rights.  Of course, Plaintiff cannot have a duplicative recovery; however, it is

---

[13] Discovery regarding the principal operative facts will be necessary on Plaintiff's state law claims in any event.

not possible to determine at the present stage the extent to which, if at all, Plaintiff's recovery herein could be affected by her workers' compensation claim.

III. <u>CONCLUSION</u>

For the foregoing reasons:

1. Defendants' Motion to Dismiss [Paper 7] is DENIED.

2. Defendants shall answer the Complaint by October 23, 2003.

3. The case shall proceed pursuant to the scheduling order issued herewith.

SO ORDERED, on <u>Monday, September 29, 2003</u>.

                                        / s /
                              Marvin J. Garbis
                      United States District Judge