IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SYLVIA J. REDDY | * |
| Plaintiff | * |
| v. | *    CASE NO.: MJG 03 CV 425 |
| BALTIMORE COUNTY, MARYLAND, et al. | * |
| Defendants | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants, Baltimore County, Maryland and Terry Woodhouse, by undersigned counsel and pursuant to Rule 56, submit the following memorandum in support of their motion for summary judgment.

**I.   POSTURE OF THE CASE**

Defendants previously moved to dismiss this action. (Paper 7)  Plaintiff filed a response to the motion to dismiss as well as a motion for leave to amend the Complaint, and an Amended Complaint. (Papers 9 and 10) The Court granted plaintiff leave to amend her Complaint (Paper 11) and denied Defendants' motion to dismiss. (Paper 14) Pending before the Court is Plaintiff's Amended Complaint[1], which Defendants have answered.

---

[1] Defendants are somewhat puzzled by the docket entries and the "Second Amended Complaint" filed as Paper 12.  The Court's Pacer system indicates that Paper 12 was electronically filed on July 7, 2003 and is simply captioned "Complaint and Election of Jury Trial."  This filing therefore occurred over two months after the May 1, 2003 filing of an "Amended Complaint and Election of Jury Trial," which is docketed under Paper 10. Due to the confusion in Plaintiff's electronic filings, the undersigned attempted to clarify at Plaintiff's deposition which version of the Complaint she was proceeding on.  According to Plaintiff's

(Paper 13) The Amended Complaint alleges the following causes of action:

>   Count I - "Deprivation of Civil Rights, §§ 1983 and 1988"

>   Count II -"Battery" (against Defendant Woodhouse only)

>   Count III -"Negligent Hiring, Training, and Supervision"

Discovery is complete[2] and the case is now ripe for summary disposition.

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is "to be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

---

counsel, they intend to be proceeding on the version captioned "Amended Complaint and Election of Jury trial" which purports to have been electronically filed on May 1 and is apparently the version filed concurrently with the other papers under Paper 10. It should be noted that this pleading drops the Police Chief, Terrence Sheridan, from the suit and correctly names the County as "Baltimore County, Maryland," as opposed to "Government of Baltimore County." It is this Complaint that Defendants answered. A copy of this pleading is attached hereto as Exhibit 1 for the Court's convenience. It is respectfully suggested that this is the Complaint which is at issue and that Paper 12 was filed inadvertently.

   [2] Plaintiff did not propound any written discovery or take any depositions. Plaintiff also did not file any Rule 26 expert disclosures. As such Defendants did not identify experts either.

The Supreme Court has described this provision as "an integral part" of the Rules which is "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct 2548, 2555 (1986). As such, "it must be construed with due regard...for the rights of persons opposing...claims...to demonstrate in the manner provided by the Rule, prior to trial, that the claims...have no factual basis." *Id.* *Celotex* places on the moving party the "initial responsibility of informing the district court of the basis for its motion" and then identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2553. The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Id.*; Rule 56(e).

The non-movant cannot rest upon unsupported allegations, in his pleadings or elsewhere, but must show "significant probative evidence" to support those allegations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct 2505, 2510 (1986). Moreover, "[a] mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely." *Barrick v. Celotex*, 736 F.2d 946, 958-59 (4th Cir. 1984). If the non-movant fails to do so, then this Court has "an <u>affirmative obligation</u>...to prevent 'factually unsupported claims...' from proceeding to trial." *Sharafeldin v. Md. Dept. Of Public Safety and Correctional Services*, 131 F. Supp. 2d. 730, 737 (D. Md. 2001), *quoting Felty v. Graves-Humphrey Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (emphasis added).

Baltimore County respectfully submits that this Court has such an obligation in this

case because none of Plaintiff's claims are supported by the facts. This will be shown by first setting forth the undisputed material facts, and then addressing the counts of the Amended Complaint in order.

### III.   MATERIAL FACTS NOT IN GENUINE DISPUTE

1. Plaintiff, Sylvia Reddy ("Reddy") is an African American female who was a Baltimore County police officer from 1987 until her retirement in November, 2003. She received a disability retirement based on back and pulmonary/respiratory problems. This pension pays her 50% of her highest salary, tax free. She has appealed that decision and is seeking a 66.67% pension on the grounds that she is completely disabled.

2. Defendant, Terry Woodhouse ("Woodhouse") is a white male who was a Baltimore County police officer from 1979 until his retirement on February 16, 2003.

3. Beginning in 1993 Reddy was assigned as a detective in the Cockeysville precinct. In this capacity she worked closely with five or six other detectives, including Woodhouse. *See,* Reddy deposition transcript at 19-20, attached as Exhibit 2.

4. During this time Reddy and Woodhouse developed a "brother-sister" type relationship wherein they would often tease each other good naturedly and engage in physical horseplay. *See, e.g.,* Exhibit 3, photos of Reddy teasing and playfully choking Woodhouse at a retirement party on January 28, 2002, less than a month before the incident giving rise to this suit. Like other officers in the unit, Reddy and Woodhouse would also sometimes have arguments and personality conflicts. *See*, Affidavits of Terry Woodhouse, Sgt. Daniel Baumiller, Detective Dennis Quirk, Detective Brian Easter, and Detective Timothy Bonsell, attached as Exhibits 4, 5, 6, 7 and 8. *See also*, Reddy depo. at 61.

5. Over the years Reddy alleges she complained to Sgt. Baumiller "a number of times" about Woodhouse. *See,* Reddy depo at 37. Normally these complaints arose from typical workplace disputes and personality conflicts that occur from time to time between co-workers who work closely with one another in a small unit. *See*, Baumiller Affidavit. On these occasions Baumiller would mediate the conflict and would then observe Reddy and Woodhouse working and interacting well again. On a few occasions Reddy allegedly complained about Woodhouse using derogatory terms about females and belittling her job performance, and about his alleged "Archie Bunker" mentality. *See,* Reddy depo. at 62.

6. Reddy alleges that on February 26, 2002 Woodhouse "kicked" her in her buttocks while she was walking past him in the hallway at the Cockeysville precinct. *See,* Amended Complaint, ¶ 7. It is noteworthy that earlier that same day Reddy had agreed to help Woodhouse drop his girlfriend's car off for service, so they were apparently on pretty good terms. *See*, Woodhouse Affidavit. In describing the incident to a psychiatrist Reddy characterized the contact as "a force thing," as opposed to a kick. She also stated that Woodhouse was laughing when she turned around and that he was "initially startled" when she reacted angrily. *See,* Report of Steven W. Seibert, M.D., page 2, attached as Exhibit 9. Woodhouse and the only other eyewitness, Sgt. Anthony Zelenka, describe the contact as a "nudge" that was done playfully, with very slight force, and with absolutely no intent to injure Reddy. *See,* Woodhouse Affidavit; *see also,* Affidavit of Sgt. Anthony Zelenka, attached as Exhibit 10.

7. When her supervisors were made aware of this incident they referred it to Internal Affairs for an investigation and immediately transferred Woodhouse to another precinct. Reddy was placed on light duty as a desk officer at the Cockeysville precinct due to her complaints of back pain as a

result of the incident, which she claimed had aggravated a pre-existing back injury. *See,* Concentra Medical Center report (limiting Reddy to "desk work only"), attached as Exhibit 11. She worked one day in that capacity and then went out on sick leave due to alleged respiratory problems, which she claims were caused by the ventilation system at the precinct. She did not return to duty until October, 2002 and was assigned to light duty at the Police Headquarters building so that she would not be exposed to the alleged "sick building" at Cockeysville. Reddy suffered no loss in pay or benefits as a result of her change of assignment. Reddy applied for the aforementioned disability pension on May 28, 2003 due to continuing back and respiratory problems.

8. Reddy filed a Charge of Discrimination with the EEOC as a result of this workplace incident. *See,* Amended Complaint ¶ 13. The County filed an Answer to the Charge and on November 21, 2002 the EEOC issued a Dismissal and Notice of Rights, specifically determining that "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." *See,* Notice of Rights, attached as Exhibit 1 to Paper 6. Reddy also filed a Worker's Compensation claim for the injuries she allegedly sustained in the incident. That claim is presently pending. *See,* First Report of Injury, and Employee's Claim, attached collectively as Exhibit 2 to Paper 6.

## IV. ARGUMENT

### A. Reddy has still not stated a Title VII claim.

As noted above, the Defendants, relying on *Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir. 1995), filed a motion to dismiss Reddy's original Complaint on the grounds that Reddy had failed to avail herself of her "right to sue" under Title VII and was therefore barred from bringing claims under 42 U.S.C. Sec. 1983. In its Memorandum and Order (Paper 14) this Court properly identified

*Booth v. Maryland*, 327 F.3d 377, 382 (4th Cir. 2003) as distinguishing *Hughes* and allowing claims to be brought under Sec. 1983 regardless of whether parallel claims are brought under Title VII.

Defendants do not dispute this ruling but only observe that Reddy's Amended Complaint still contains no claim under Title VII. In fact, the only amendment Reddy made was to insert the following language: "*and Sec. 2000e et seq.*" into the middle of paragraph 1 of the Amended Complaint. However, despite this passing reference to the Title VII statute, Reddy's causes of action remain the same, and assert only Due Process and state common law claims.

### B.  The facts in this case do not support a viable Due Process claim against Woodhouse or Baltimore County.

#### 1. Woodhouse did not violate Reddy's substantive due process rights.

Reddy's version of the facts, taken in the light most favorable to her, do not come close to stating a substantive due process claim against Woodhouse. Reddy alleges that she was subjected to derogatory, sexist remarks by Woodhouse, that her supervisors didn't adequately address her complaints about Woodhouse's "Archie Bunker" mentality, and that Woodhouse ultimately "kicked" her.

First, as will be explained below, such conduct simply doesn't rise to the level of a constitutional violation. Second, as Reddy herself concedes, Sgt Baumiller *did* counsel and reprimand Woodhouse when Reddy complained to him. However, as the other officers have testified, and as the photos in Exhibit 3 show, Reddy was a willing and active participant in much of the teasing and horseplay that transpired, and for the most part Reddy and Woodhouse got along fine. Third, although the "kick" in question was undoubtedly immature and impulsive, it was not done maliciously or with any intent to injure. Accordingly, these facts fail as a matter of law to state a substantive due process claim.

In *Hall v. Tawney*, 621 F.2d 607 (4th Cir. 1980) the Fourth Circuit took pains to distinguish between acts that may constitute common law torts and those that are of constitutional magnitude. The Court explained that

> [N]ot every state law tort becomes a federally cognizable "constitutional tort" under § 1983 simply because it is committed by a state official, *Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433, 443 (1979); *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976), [and therefore] *we do not find the substance of this right in the parallel right defined by state assault and battery law.* Instead, we find it grounded in those constitutional rights given protection under the rubric of substantive due process in such cases as *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (forcible use of stomach pump by police); *Jenkins v. Averett*, 424 F.2d 1228 (4th Cir. 1970) ("reckless" pistol shooting of suspect by police); and *Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973) (unprovoked beating of pre-trial detainee by guard): the right to be free of state intrusions into realms of personal privacy and bodily security through means *so brutal, demeaning, and harmful as literally to shock the conscience of a court.* The existence of this right to ultimate bodily security the most fundamental aspect of personal privacy is unmistakably established in our constitutional decisions as an attribute of the ordered liberty that is the concern of substantive due process. Numerous cases in a variety of contexts recognize it as *a last line of defense against those literally outrageous abuses of official power* whose very variety makes formulation of a more precise standard impossible.

621 F.2d at 613 (emphasis added).

The plaintiff in *Hall* was a student who had been savagely beaten with a rubber paddle by her teacher, such that she was hospitalized for ten days. *Id.* at 614. The Court held that these allegations were sufficient to withstand a motion to dismiss, but that at trial the plaintiff would have to prove that these acts were "inspired by malice or sadism rather than a merely careless or unwise excess of zeal that amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *Id.* at 613.

Defendants respectfully submit that the "kick" in question (which was described as more of a "nudge" by Woodhouse and the other witness, Zelenka) was not brutal, sadistic *or* an abuse of official power. The law clearly requires proof on both prongs. In other words, in order to state a constitutional claim the actions must be extreme, *and* they must stem from the actor's official status or power. In *Jones v. Wellham*, 104 F.3d 620 (4th Cir. 1997) the Court affirmed a substantive due process verdict against a police officer who had used his official authority to intimidate and ultimately rape a woman he had stopped on suspicion of drunk driving. The Court found that because the rape evolved out of the officer's abuse of his authority it violated the plaintiff's Fourteenth Amendment right to "bodily integrity." *Id.* at 628. It is axiomatic that unless there is a nexus to "state action" the constitution is not even implicated. *Baker v. McCollan, supra.*

Undersigned counsel has found no reported cases involving due process claims arising out of "Archie Bunker" attitudes, or alleged "kicks." However, in *Hawkins v. Holloway*, 316 F.3d 777 (8th Cir. 2003) the Eighth Circuit examined the contours of substantive due process in the context of a County Sheriff's alleged abuse of his subordinates. Despite acts far more outrageous than those attributed to Woodhouse (incessant sexual molestation and humiliation of both male and female Deputy Sheriffs; *Id.* at 781-84) the only claims that withstood summary judgment were the sexual batteries on the female deputy, and the repeated assaults on numerous other staff wherein "the sheriff pointed loaded weapons at them at close range, often pointing at their genitals, and made direct and forceful threats to kill them or cause grievous bodily injury." *Id.* at 787. The Court found that, if believed, "the facts demonstrate that the sheriff *deliberately abused his power* by threatening deadly force as a means of oppressing those employed in his department, *thus elevating his conduct to the arbitrary and conscience shocking behavior prohibited by substantive due process*." *Id.* (emphasis

10

added). The Eighth Circuit properly focused on the Sheriff's abuse of his office as the factor which "elevated" the case from a common law tort action to a constitutional claim.

Significantly, in the case at bar there is no such nexus. On the contrary, Woodhouse had no supervisory authority over Reddy and his alleged "kick" had absolutely nothing to do with his official duties or authority as a Baltimore County police officer. Further, the conduct in question is a far cry from what could ever be described as sadistic or conscience shocking.

In the seminal case of *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), the Supreme Court held that "[n]ot only does the word 'deprive' in the due process clause connote more than a negligent act, but we should not open the federal courts to lawsuits where there has been no affirmative abuse of power." *Id.* at 330, 106 S.Ct. at 664. The Court went on to observe that "historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty or property." *Id.* at 331, 106 S.Ct. at 665 (emphasis in original). Woodhouse's impetuous "kick" was the very antithesis of a "deliberate decision."

In *Davidson v. Cannon*, 474 U.S. 344, 106 S. Ct. 668 (1968) (the companion case to *Daniels v. Williams*), the Court addressed a due process claim that involved the failure of prison officials to properly protect the plaintiff from a fellow inmate. The plaintiff, Davidson, had written a note detailing the specific threat of serious harm a fellow inmate had made to him. However, due to bureaucratic oversight the note got misplaced and ultimately forgotten. Two days later Davidson was violently assaulted by the prisoner who had threatened him. Notwithstanding this egregious oversight, the Supreme Court held that "respondent's lack of due care in this case led to serious injury, but that lack of care simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent." 474 U.S. at 347-48, 106 S.Ct. at 670.

The Fourth Circuit has interpreted *Daniels* and *Davidson* quite stringently. In *Pink v. Lester*, 52 F.3d 73 (4th Cir. 1995), the Court explained that:

> The basic rationale for the *Daniels* decision is a powerful one. The term "deprive," as employed in the Fourteenth Amendment, suggests more than a mere failure to take reasonable care: it connotes an intentional or deliberate denial of life, liberty, or property. Thus, the most reasonable interpretation of the Fourteenth Amendment would limit due process claims to such active deprivations.

*Id.* at 75.

In that case, the Plaintiff, Pink, had requested that funds be withdrawn from his prison account so that he could defend against a civil forfeiture action. However, the prison officials failed to properly process this check request, and as a result, a default judgment was entered against the prisoner and certain of his property was forfeited. The Fourth Circuit acknowledged the officials' "carelessness," but rejected Pink's due process claim, reasoning that:

> The language and the purpose of the due process clause thus restrict violations thereof to official conduct that entails some measure of deliberateness. Absent such limitation, the Fourteenth Amendment would be demeaned, and federal courts would adjudicate claims that lack connection to federal law. In our system of governance, the Constitution is revered but not ubiquitous, and federal courts sit as courts of limited jurisdiction.

*Id.*

In *Temkin v. Frederick County Commr's*, 945 F.2d 716 (4th Cir. 1991), the Court surveyed the applicable law, including *Daniels, Davidson,* and, *Rochin v. California*, 342 U.S. 165, 72 S. Ct. 205 (1952), and reaffirmed that only "conduct which 'amounts to a <u>brutal and inhumane abuse of official power literally shocking to the conscience</u>,' violates the substantive guarantees of the Due Process Clause . . ." *Temkin*, 945 F.2d at 720 (internal citations omitted) (emphasis added). Quite simply, "not all undesirable behavior by state actors is unconstitutional." *Pink v. Lester*, 52 F.3d 73, 75 (4th

Cir. 1995), *citing Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160 (1976)(the Fourteenth Amendment is not "a font of tort law").

The other federal appeals courts have also reserved the protections of the Due Process Clause for instances of <u>deliberate</u> conduct by governmental officials. *See, e.g., Nix v. Franklin County School Dist.*, 311 F.3d 1373 (11th Cir. 2002) (student who was electrocuted during science experiment failed to state due process claim where teacher's conduct was perhaps reckless, but harm was not intended); *Lewis v. Anderson,* 308 F.3d 768, 772 (7th Cir. 2002) (gross negligence by county officials in placing children in dangerous foster home not sufficient to state due process claim, where no affirmative misconduct shown); *Ziccardi v. City of Philadelphia,* 288 F.3d 57 (3[d] Cir. 2002) (Plaintiff who was rendered a paraplegic by the alleged reckless indifference of paramedics failed to state due process claim because he failed to show a "<u>conscious</u> disregard of not just a substantial risk, but a great risk of serious harm."); *Hawkins v. Holloway, supra.* Defendants respectfully submit that the conduct complained of by Reddy does not, as a matter of law, meet this standard. As such, Defendant Woodhouse is entitled to judgment, as a matter of law, on Count I.

**2. Even if the Court finds a substantive due process violation Woodhouse is still entitled to    qualified immunity.**

Even if the Court believes that Woodhouse's actions violated Reddy's substantive due process rights, he should still be granted qualified immunity because any such right was not clearly established. The Fourth Circuit has formulated a three step analysis for determining whether an officer's conduct is protected by qualified immunity: (1) identify the right allegedly violated, (2) decide whether that right was clearly established at the time of the alleged violation, and, if so, (3)

determine whether a reasonable officer in the defendant's position would have known that his or her actions violated that right. *Smith v. Reddy,* 101 F.3d 351, 355 (4th Cir. 1996).

In *Robles v. Prince George's County*, 302 F.3d 262 (4th Cir. 2002), the Fourth Circuit held that two police officers who had handcuffed a suspect to a light pole and left him there in the middle of the night were nonetheless entitled to qualified immunity because they were not on notice (under the controlling legal precedents) that such action violated the suspect's due process rights. *Id.* at 270-71. The *Robles* court reasoned that:

> Although the officers' actions in this instance were foolish and unorthodox, it is also not clear that at the time they acted they should have reasonably known that their conduct violated Robles' constitutional rights.
> The officers should have known, and indeed did know, that they were acting inappropriately. But whether they understood their conduct violated clearly established federal law is an altogether different question. The Constitution is not a "font of tort law" to be "superimposed upon whatever systems may already be administered by the States." *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). The officers' conduct violated police regulations as well as state law and was dealt with under those provisions. But not every instance of inappropriate behavior on the part of police rises to the level of a *federal* constitutional violation. Going forward, officers are now on notice that the type of Keystone Kop activity that degrades those subject to detention and that lacks any conceivable law enforcement purpose implicates federal due process guarantees. Going backward, however, and imposing retrospective liability would eviscerate the requirement of notice at the core of the qualified immunity defense.

*Id.* at 271.

It is respectfully submitted that although Woodhouse's actions may have been "foolish," "innapropriate," and perhaps something out of "Keystone Kops," they did not

violate clearly established law. Thus, even if it could be said that Reddy's substantive due process rights were violated, Woodhouse should still be granted qualified immunity because, "the qualified immunity defense... gives ample room for mistaken judgments by protecting all but the plainly incompetent, or those who knowingly violate the law," *Malley v. Briggs,* 475 U.S. 335, 341 (1986), and is only forfeited by officers who "transgress bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

### 3. Reddy fails as a matter of law to state a viable due process claim against the County.

Where, as in the instant case, a plaintiff fails to prove a constitutional violation by the "active" defendant (in this case Woodhouse) then, *a fortiori,* there cannot be constitutional liability on the part of the municipal defendant. *Los Angeles v. Heller,* 475 U.S. 796, 106 S. Ct. 1571 (1986). Further, even if Reddy could prove that Woodhouse violated her substantive due process rights, she still has no evidence to substantiate a constitutional claim against Baltimore County because there is no *respondeat superior* liability under 42 U.S.C. Sec. 1983. *Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir. 1987); *Monell v. Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018 (1978). Rather, in order to recover damages against a municipality such as Baltimore County, a § 1983 plaintiff must adequately plead and ultimately prove three elements: (1) the existence of an official policy or custom; (2) that is fairly attributable to the municipality; (3) that proximately caused the underlying constitutional violation. *Jordan ex rel. Jordan v. Jackson,* 15 F.3d 333, 338 (4th Cir. 1994).

In the instant case the only allegations concerning any "custom and policy" are that

"[t]he Defendant Government of Baltimore County maintains a police department which operates under and administers a set of law enforcement policies, practices and customs involving hiring, training and supervision of its police officers. These policies, practices and customs include, but are not limited to, training in the use of courtesy and respect for the dignity of other individuals including fellow police officers." Amended Complaint, para. 5. Then, in support of her substantive due process claim, Reddy merely alleges that after she complained of this incident she was "improperly, involuntarily transferred out of her unit . . ." *Id.,* para. 7, and that "no action has been taken by the Police Department against the harassor, Officer Terry Woodhouse." *Id.,* para. 8. Finally, Reddy baldly asserts that "several other police officers" that "have spoken up on my behalf" have been "demoted, moved to other assignments, placed back out on street duty and been given unreasonable reprimands and charges." *Id.,* para. 9.

However, the evidence in the record demonstrates that each of these allegations is patently false. First, as explained above, following the alleged "kick" Reddy remained at the Cockeysville precinct but was assigned to work the desk because of work restrictions placed on her by the department's medical clinic after she complained of back pain. Second, as also detailed above, Woodhouse was immediately transferred to another precinct and an Internal Affairs investigation was conducted. Finally, when asked at her deposition about the alleged retaliation against other officers, Reddy provided absolutely no detail to support these claims - only that a couple female officers had been moved from desk duty to patrol positions. When asked what made this reassignment retaliatory Reddy conceded that

it was actually done because of a police regulation that requires at least one male desk officer to be available to process male prisoners. *See,* Reddy depo. at 91-93. When pressed for details about any other alleged acts of retaliation, Reddy could only respond that "You need to ask them the details of what happened to them." *Id.* at 94.

In light of this utter lack of proof, it is clear that even if Reddy could prove that Woodhouse violated her substantive due process rights, she could never prove that a custom or policy of Baltimore County was the proximate cause of such a violation. Beyond the fact that no such unconstitutional custom or practice exists, Reddy has not even bothered to conduct any discovery on that or any other issue, either by interrogatory, document request, or deposition. Thus, it is quite clear that the County is also entitled to judgment as a matter of law on Reddy's due process claim.

 **4. Since Reddy has no viable federal claims this Court should decline to exercise supplemental     jurisdiction over the state law claims in Counts II and III.**

Pursuant to 28 U.S.C. Sec. 1367 (a), this Court has supplemental jurisdiction over state law claims which arise out of the same nucleus of facts as those plead in support of the federal claims which provide the court's original jurisdiction. However, the Supreme Court has counseled restraint in the exercise of that supplemental jurisdiction. "[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie Mellon University v. Cohill*, 484 U.S. 343, 349-50, 108 S. Ct. 614, 618-19 (1988). Since Reddy has no viable federal claims this Court has no

cause to retain jurisdiction over the state law claims in Counts II and III.

## CONCLUSION

For all of the foregoing reasons, Count I -the only federal cause of action- fails as a matter of law. Further, there is no cause for this Court to exercise supplemental jurisdiction over the pendent state claims.

                                        Respectfully submitted,

                                        __/s/_____
                                        PAUL M. MAYHEW
                                        Assistant County Attorney
                                        Trial Bar # 22210
                                        400 Washington Avenue
                                        Towson, MD 21204
                                        410-887-4420
                                        Attorney for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 12th day of April, 2004, a copy of Defendants' motion for summary judgment and memorandum in support thereof were electronically served on:

J. Edward Martin, Esq.
Trial Bar No. 0918
409 Washington Avenue, Suite 707
Towson, Maryland 21204
(410) 337-3755

Carmel J. Snow, Esq.
Trial Bar No. 24989
2701 W. Patapsco Avenue, Suite 109
Baltimore, Maryland 21230
(410) 525-0325

                                                  ___/s/_____

                                        PAUL M. MAYHEW
                                          Assistant County Attorney

S:\Mayhew\Pleads\reddy.sjmemo.wpd